**JS 44** (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Cleveland Regional Medical Center

**(b)** County of Residence of First Listed Plaintiff: **Liberty County**
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Greg Etzel, Baker & Hostetler LLP, (713) 646-1316
1000 Louisiana, Suite 2000, Houston, TX  77002

## DEFENDANTS
Kathleen Sebelius, in her capacity as Secretary of the Department of Health & Human Services

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff
☐ 3  Federal Question (U.S. Government Not a Party)
☒ 2  U.S. Government Defendant
☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS |  | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☒ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | | | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C. 1395ww
Brief description of cause:
Complaint for judicial review of final adverse agency decision on Medicare reimbursement (disproportionate share hospital adjustment eligibility)

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____
DOCKET NUMBER _____

DATE: 11/12/09
SIGNATURE OF ATTORNEY OF RECORD: [signature]

**FOR OFFICE USE ONLY**
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| CLEVELAND REGIONAL<br>MEDICAL CENTER,<br>300 East Crockett Street<br>Cleveland, Texas 77327<br><br>Plaintiff,<br><br>v.<br><br>KATHLEEN SEBELIUS, IN HER<br>CAPACITY AS SECRETARY OF THE<br>DEPARTMENT OF HEALTH AND<br>HUMAN SERVICES,<br>200 Independence Avenue, S.W.<br>Washington, D.C. 20201<br><br>Defendant. | §§§§§§§§§§§§§§§§§ | File No. 1:09 cv 960 |

**COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE
AGENCY DECISION ON MEDICARE REIMBURSEMENT**

### I.   INTRODUCTION

1. Plaintiff, Cleveland Regional Medical Center ("Plaintiff" or "Hospital"), brings this action for an order compelling the Secretary of the Department of Health and Human Services ("Secretary" or "Defendant") to reimburse the Hospital for Medicare payments it is due in accordance with the plain language of Section 1886(d)(5)(F)(v) of the Social Security Act and the Secretary's own regulations for the time period at issue. While payment to hospitals under the Medicare program is complex, the issue in this case is relatively simple. The Hospital has been wrongfully denied Medicare Program payments for its fiscal year 2001 based upon the Secretary's arbitrary refusal to acknowledge that the Hospital had 100 beds at its facility for

purposes of qualifying for additional Medicare payments designed to assist hospitals (like Cleveland Regional Medical Center) that treat a large number of low-income patients.

2. Under the federal Medicare Program, certain hospitals caring for a significant portion of low-income patients are entitled to additional reimbursement (this additional payment is referred to as a Disproportionate Share Hospital, or "DSH" payment adjustment). The factors involved in determining whether a hospital receives a DSH payment adjustment are: (1) the number of beds in the hospital, (ii) the number of low-income patient days, and (iii) the hospital's location. It is undisputed that the Hospital has satisfied the second and third requirements for receiving a DSH payment adjustment. At issue in this case is whether the hospital meets the first requirement; specifically, whether the or not the Hospital has 100 beds.

3. After a hearing before the Center for Medicare and Medicaid Services' ("CMS") Provider Reimbursement Review Board ("PRRB"), the PRRB held in favor of the Hospital, determining that under the plain language of the bed-counting regulation and applicable CMS Manual guidance, the Hospital had 114 beds for DSH eligibility and payment purposes for the Hospital's fiscal year 2001. However, the Secretary reversed the PRRB's decision, justifying her decision with post-hoc policy rationalizations that conflict with the plain language of the applicable statute and regulations. For these reasons, the Secretary's reversal of the PRRB's decision was arbitrary, capricious, and an abuse of her discretion.

4. The arbitrary decision of the Secretary has forced the Hospital to expend additional resources, which would better be utilized for providing health care, to obtain an order from this Court directing the Secretary to follow the plain language of the Medicare statute and her own regulations in place during the relevant time period.

2

## II. PARTIES

5. The Plaintiff, Cleveland Regional Medical Center (Medicare Provider Number 45-0296), is a Medicare-certified acute care facility located in Cleveland, Texas. During the fiscal year at issue, the Hospital was licensed by the state of Texas for 115 total beds.

6. At all times relevant herein, the Plaintiff operated a "hospital" as defined in 42 U.S.C. § 1395x(e) and was a "provider of services" participating in the Medicare Program within the meaning of 42 U.S.C. § 1395x(u) and 42 C.F.R. § 489.2(b)(1).

7. The Hospital is an "urban" hospital for purposes of the disproportionate share hospital ("DSH") statute at 42 U.S.C. § 1395ww(d)(5)(F)(v). It is undisputed that the Hospital met the 15 percent DSH threshold for urban providers contained in that statutory provision.

8. The Defendant, Kathleen Sebelius, Secretary of the Department of Health and Human Services ("Secretary" or "Defendant"), or her predecessors in office, is the federal officer responsible for the administration of the Medicare Program pursuant to the Social Security Act. The Secretary has delegated administration of the Medicare Program to CMS.

## III. JURISDICTION AND VENUE

9. This is a civil action brought to obtain judicial review of a final decision rendered by the Administrator of CMS. The Plaintiff Hospital is seeking reversal of the CMS Administrator's Decision dated September 21, 2009 (issued on September 24, 2009). The Administrator's Decision reversed the PRRB's finding that the Hospital had more than 100 available beds for DSH eligibility purposes during the fiscal year in question.

10. This action arises under Title XVIII of the Social Security Act, as amended (42 U.S.C. § 1395 et seq.), which establishes the Medicare program (the "Medicare Program"), and the Administrative Procedure Act, 5 U.S.C. §§ 551-559, 701-706 (the "APA").

3

11. This Court has jurisdiction to review a decision rendered by the Administrator of CMS, acting as delegate of the Secretary, pursuant to 42 U.S.C. § 1395oo(f). The same statute also provides for venue in this Court. This Court has authority to grant the relief requested under 42 U.S.C. § 1395oo(f) and the APA.

## IV. STATUTORY AND REGULATORY BACKGROUND RELATING TO THE MEDICARE REIMBURSEMENT AND APPEAL PROCESS

12. Title XVIII of the Social Security Act (the "Act") establishes the Medicare Program, which provides hospital and medical insurance coverage to most persons over 65 years of age and to certain disabled persons. Under the Act, an eligible Medicare beneficiary is entitled to have payment made by the Medicare Program on his or her behalf for, inter alia, inpatient and outpatient hospital services provided to the beneficiary by a hospital participating in the Medicare Program as a provider of services.

13. Payment from the Medicare Program to a provider of services is a multifaceted and complicated process. Each hospital participating in the Medicare Program files an annual cost report at the close of each fiscal year detailing the various costs incurred by the hospital, reporting numerous relevant statistics, and calculating its Medicare Program payment.

14. After a Medicare hospital provider files its cost report, the amount of payment owed to the hospital for services furnished to Medicare beneficiaries is audited and adjusted for correctness by a regional fiscal intermediary acting as an agent of the Secretary. 42 U.S.C. § 1395h.

15. Upon completion of its audit, the fiscal intermediary issues a Notice of Program Reimbursement ("NPR"), which contains the fiscal intermediary's official determination of total Medicare Program reimbursement due to the hospital for the applicable cost reporting period. The NPR sets forth the net amount due the hospital or the Medicare Program based on the fiscal

4

intermediary's reconciliation of interim payments made to the hospital during the cost reporting year and year-end adjustments made by the fiscal intermediary during the audit.

16. A hospital may appeal the fiscal intermediary's determination of Medicare Program reimbursement to the PRRB pursuant to 42 U.S.C. § 139500(a) and 42 C.F.R. § 405.1835. The Administrator of CMS may reverse, affirm, or modify the decision issued by the PRRB. 42 U.S.C. § 139500(f).

17. A hospital has the right to obtain judicial review of any final decision of the PRRB, or any reversal, affirmance, or modification of the PRRB's decision by the Secretary. Id.

## V. THE MEDICARE DISPROPORTIONATE SHARE ADJUSTMENT

18. This case involves a controversy surrounding a Medicare reimbursement mechanism established by Congress, which is known as the disproportionate share hospital (or "DSH") adjustment. The DSH adjustment is determined through the cost reporting process outlined above and reflects an additional payment for certain hospitals that treat a significant number of low-income patients.

19. From the inception of the Medicare Program until 1983, hospitals were entitled to reimbursement for services furnished to Medicare beneficiaries based upon the "reasonable costs" they actually incurred. 42 U.S.C. §§ 1395f(b)(1), 1395x(v). In 1983, in an effort to create incentives for more efficient delivery of hospital care, Congress amended the Act to provide for the payment of operating costs of inpatient hospital services on a prospective basis rather than on the basis of reasonable costs. Title VI of the Social Security Act Amendments of 1983 (Pub. L. 98-21), codified at 42 U.S.C. § 1395ww. Under the prospective payment system adopted by Medicare in 1983, hospitals and other health care providers are reimbursed their inpatient operating costs on the basis of prospectively determined national and regional rates for each patient discharge rather than on reasonable operating costs for providing the services.

20. Under the prospective payment system, payments are made to hospitals via lump sum amounts assigned based upon a patient's diagnosis and discharge. See Social Security Amendments of 1983, Pub. L. No. 98-21 § 601(e); 42 U.S.C. § 1395ww(d). These lump sum prospective payments are set to approximate the average cost of caring for a patient with a particular diagnosis in an efficiently-run hospital. Thus, hospitals caring for Medicare patients receive a standard reimbursement amount for that patient (subject to certain geographic and other adjustments), regardless of the actual costs of caring for that patient. See 42 U.S.C. § 1395ww(d); 42 C.F.R. Part 412.

21. When Congress established the prospective payment system by the Social Security Act Amendments of 1983, it included a mandate that the Secretary provide for payment exceptions and adjustments to take into account the special needs of public or other hospitals that serve a significantly disproportionate share of patients who have low income. Former section 1886(d)(5)(C)(i), formerly at 42 U.S.C. § 1395ww(d)(5)(C)(i). Congress recognized the additional costs associated with the treatment of low-income populations (e.g., patients presenting to the hospital with more serious medical conditions) and ultimately adopted a specific payment calculation designed to assist hospitals that treat large populations of such patients.

22. According to the DSH statute, a hospital "serves a significantly disproportionate share of low income patients," and is therefore eligible for DSH payment adjustments, if the hospital has a DSH patient percentage which equals or exceeds 15% and "the hospital is located in an urban area and has 100 or more beds." 42 U.S.C. § 1395ww(d)(5)(F)(v) (emphasis added).

23. There is no dispute regarding the fact that the Hospital is "urban" and easily exceeded the requisite 15% DSH patient percentage threshold. The sole issue in this case is

6

whether the Hospital meets the "100 or more beds" requirement for DSH payment adjustment purposes.

## VI. FACTS SPECIFIC TO THIS CASE

24. The Plaintiff Hospital operates an acute care facility in Cleveland, Texas, in an urban area roughly 50 miles from Houston. During the fiscal year in question, the Hospital was licensed for a total of 115 beds. The Hospital's fiscal year 2001 ran from September 1, 2000 through August 31, 2001.

25. During the relevant time period, the Secretary's regulation governing the counting of "beds" for DSH purposes stated that "the number of beds in a hospital is determined in accordance with 42 C.F.R. § 412.105(b)." 42 C.F.R. § 412.106(a)(1)(i) (2000). Regulation 412.105(b), which governs bed counting for the indirect medical education payment adjustment, stated:

> Determination of number of beds. For purposes of this section, the number of beds in a hospital is determined by counting the number of <u>available</u> bed days during the cost reporting period, not including beds or bassinets in the healthy newborn nursery, custodial care beds, or beds in excluded distinct part hospital units, and dividing that number by the number of days in the cost reporting period.

42 C.F.R. § 412.105(b) (2000) (emphasis added). This bed counting regulation, along with additional guidance published by CMS, established the official agency policy adopted by CMS for determining the size of a hospital facility for DSH payment qualification under the statutory provisions of 42 U.S.C. § 1395ww(5)(F)(v).

26. Of the Hospital's 115 licensed patient care beds, at least 114 beds were licensed acute care beds maintained for and available to house inpatients, and none were located in portions of the Hospital excluded from payment under the inpatient prospective payment system.

7

27.    On its fiscal year 2001 cost report, the Hospital noted 104 beds for purposes of its DSH payment qualification. In reaching this number, the person preparing the cost report erroneously failed to include 11 beds that had formerly been located in an excluded skilled nursing unit. However, because the skilled nursing unit was decertified in 2000, prior to the start of the Hospital's fiscal year 2001, the omission of the 11 beds was an error. Regardless of the error, the Hospital reported greater than 100 beds on its FY 2001 cost report.

27.    Thus, based on its licensure and operation of more than 100 acute care beds, the Hospital contended that it was entitled to receive a Medicare DSH payment adjustment based upon its provision of services to a disproportionate share of low-income patients for its fiscal year 2001.

28.    The Secretary's fiscal intermediary, however, denied the Hospital's right to this payment solely on the basis that it determined that the Hospital did not have 100 or more beds under the applicable DSH statute and regulations because it allegedly <u>used</u> certain of these inpatient beds for outpatient "observation" services and/or as "swing beds" for purposes of providing skilled nursing services. At audit, the fiscal intermediary removed 409 bed days relating to the provision of observation services and 2,528 bed days relating to the provision of swing-bed services. The removal of these bed days resulted in a bed count of 95.

29.    In making its bed count determination, the fiscal intermediary ignored the plain language and prior application of the statute, regulation, and interpretive guidance. In addition, the fiscal intermediary retroactively applied rules that were not adopted by the Secretary until years after the cost reporting period at issue.

30.    Upon receipt of its fiscal year 2001 Notice of Program Reimbursement denying its Medicare DSH payments, the Hospital timely filed a hearing request with the Provider

Reimbursement Review Board ("PRRB") pursuant to 42 C.F.R. § 405.1835 et seq. The PRRB held a hearing on the appeal on January 29, 2008.

31. The PRRB held in favor of the Hospital, stating that "the Intermediary's adjustments disallowing swing-bed days and observation bed days from the Provider's determination of available bed days used to determine bed size, and ultimately DSH eligibility, was improper." PRRB Dec. No. 2009-D33 (July 16, 2009). The PRRB's factual findings also included the finding that "all of the beds at issue in this case including the labor and delivery room beds are licensed acute care beds located in the inpatient area of the Provider's facility. The Provider presented floor plans, detailed pictures, and credible and convincing testimony from the Director of Engineering regarding the facility's capacity to provide inpatient care. Based on the evidence presented, the Provider has shown that it had at least 114 beds permanently maintained and available for lodging inpatients during the fiscal year at issue." Id.

32. In spite of the PRRB's factual findings and finding that the rationale for inclusion of observation and swing bed days in the Hospital's bed count is the same as that involved in the Sixth Circuit Court of Appeals' hospital-favorable decision in Clark Regional Medical Center, the Secretary reversed the PRRB's decision on September 21, 2009. See id.; see also Decision of the Administrator, Cleveland Regional Medical Center v. Wisconsin Physicians Service (September 21, 2009) ("Administrator Decision").

33. In its Administrator Decision, the Secretary argued that in addition to beds removed based on the removal of the 409 observation bed days and 2,528 swing bed days, the Provider's bed count should be further reduced to exclude 7 labor and delivery room beds, 11 beds in a first floor unit, and 19 beds in a second floor unit. Id. In making her decision, the Secretary ignored the Board's factual findings, photographic and written evidence, and live "credible and convincing" witness testimony that these beds were all licensed and maintained for

9

inpatient care. Id. Additionally, the Secretary held that contrary to the Board's factual findings, the Provider "has not proven by a preponderance of the evidence that these [7 labor and delivery beds] meet the definition of 'available bed' and should be included in the bed count." Id. The Secretary ruled that although the fiscal intermediary had concluded at audit that the Provider had 95 beds (based on the disallowance of swing bed and observation days), the Provider's available bed count should actually be much lower. Id.

34. Having exhausted its administrative remedies, the Hospital now comes before this Court seeking relief. The Plaintiff Hospital brings the present action accordance with its rights under Section 1878(f) of the Social Security Act and 42 C.F.R. § 405.1877, which provide for appeals of final administrative decisions of the Secretary of Health and Human Services. 42 U.S.C. § 1395oo(f).

### VII.  VIOLATIONS OF LAW AND BASES FOR REVERSAL OF THE ADMINISTRATOR'S DECISION

35. The Hospital asserts that the CMS Administrator's decision is in error and has wrongly denied the Hospital Medicare reimbursement to which it is entitled.

36. CMS, the Secretary's delegate to operate the Medicare Program, has failed to properly apply its own regulation, 42 C.F.R. § 412.105(b) (2000), and the statute it administers at 42 U.S.C. § 1395ww(d)(5)(F)(v). The statute instructs the Secretary to provide for an additional payment to urban hospitals with 100 or more "beds" that serve a disproportionate share of low-income patients. Although the Secretary's regulation at 412.105(b) narrows the definition of the term "beds" from the manner in which it is used in the statute, the regulation instructs the Secretary to count all beds other than beds or bassinettes in the healthy newborn nursery, custodial care beds, or beds in excluded distinct part hospital units. During the applicable time period, the Hospital had at least 114 beds according to either one of these definitions. The

Secretary has therefore acted in a manner contrary to the plain language of the statute and the regulation by refusing to include various beds in the Hospital's bed count for purposes of the Hospital's eligibility for the DSH payment adjustment. This Court may set aside agency action that is arbitrary, capricious, an abuse of discretion, or not in accordance with law, pursuant to 5 U.S.C. § 706(2).

37. Additionally, by effectively applying a requirement that only beds that are actually currently being used for lodging inpatients may be counted for purposes of the Hospital's DSH bed count, the Secretary impermissibly changed the substantive requirements of the applicable bed-counting regulation without complying with the rulemaking procedures mandated by Section 553(b) of the Administrative Procedure Act. As such, the Agency's actions may be set aside by this Court pursuant to 5 U.S.C. § 706(2).

38. Moreover, the Secretary's retroactive application of policy changes made in 2003 and 2004 to the Hospital's fiscal year 2001 cost report is impermissible under the APA. See 5 U.S.C. § 551. As such, the Secretary's actions may be set aside by this Court pursuant to 5 U.S.C. § 706(2).

39. Finally, by disallowing a number of additional beds (11 first floor beds, 19 second floor beds, and 7 "labor and delivery" beds) on the basis that such beds were not maintained for inpatient use, the Secretary has utterly disregarded the evidence in the record and the PRRB's factual findings with respect to the capabilities of these beds and the Hospital's ability to make certain beds "available" for inpatient use in a timely manner. This Court may set aside agency action that is unsupported by substantial evidence in the administrative record, pursuant to 5 U.S.C. § 706(2)(E).

**WHEREFORE**, the Plaintiff respectfully requests:

    a.    That this Court vacate the Secretary's action on the basis that it is:

        (i)    arbitrary, capricious, an abuse of discretion, and not in accordance with the law;

        (ii)    without observance of procedure required by law; and

        (iii)    unsupported by substantial evidence in the record;

    b.    That this Court hold in accordance with the PRRB's decision in this case and remand this case to the Secretary with an order compelling a determination that the Hospital had at least 100 beds for purposes of the Medicare DSH adjustment, and that the Secretary must calculate and pay the Hospital's DSH payment adjustment accordingly;

    c.    That this Court order the Secretary to pay Plaintiff interest on the payment resulting from the Court's order in accordance with 42 U.S.C. § 1395oo(f)(2); and

    d.    That this Court grant to Plaintiff such other relief in law and/or equity as the Court may deem just and proper.

Respectfully submitted,

/s/ Gregory N. Etzel
Gregory N. Etzel
Texas Bar No. 00793705
Baker & Hostetler, LLP
1000 Louisiana, Suite 2000
Houston, Texas 77002
Telephone: 713.646.1316
Fax: 713.751.1717
getzel@bakerlaw.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 12th day of November, 2009, I caused the foregoing to be filed electronically with the Court, and a true and correct copy hereof to be served by U.S. Certified Mail, Return Receipt Requested, postage prepaid, to: **Kathleen Sebelius**, as Secretary for the Department of Health and Human Services, 200 Independence Avenue, S.W., Washington, DC 20201, **John M. Bales**, United States Attorney for the Eastern District of Texas, 350 Magnolia Avenue, Suite 150, Beaumont, Texas 77701, and **Eric Holder**, Attorney General, United States Department of Justice, 950 Pennsylvania Avenue, N.W., Washington, DC 20530-00001.

/s/ Gregory N. Etzel
Gregory N. Etzel
Texas Bar No. 00793705
Baker & Hostetler, LLP
1000 Louisiana, Suite 2000
Houston, Texas 77002
Telephone: 713.646.1316
Fax: 713.751.1717
getzel@bakerlaw.com